People of the State of Illinois, Defendant in Error, v. Vincent Romero, Plaintiff in Error.

Gen. No. 49,871.

First District, First Division.

December 14, 1964.

John J. Caulfield, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Paul A. O'Malley,

Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE BURMAN delivered the opinion of the court.

This is an appeal from a conviction for unlawful sale and possession of narcotic drugs under the Uniform Narcotic Drug Act (Ill Rev Stats 1963, c 38, §§ 22–1 through 22–54). On consolidated indictments the Criminal Court, without a jury, found the defendant guilty of the sale and possession of narcotic drugs and sentenced him to one term of from ten to twelve years for the sale and to another term of from two to ten years for possession, the sentences to run concurrently and to be served in the Illinois State Penitentiary. The appeal which was originally filed in the Supreme Court was assigned to this court.

The defendant contends that the State's evidence was insufficient to establish the guilt of the defendant beyond all reasonable doubt and hence the conviction should be reversed. This argument is based principally on the contention that the State's case rests primarily upon the testimony of an admitted user of narcotics who was also, at the time of the occurrence, under indictment for a felony.

Because of the nature of the defendant's contention, it is necessary to review the State's evidence in detail. Theodore Hall testified that on September 10, 1962, after furnishing information to Officers Harvick, Deering, Healey, and Lawrence, he was searched and was given $10, consisting of one $5 bill, four $1 bills, the serial numbers of which were recorded, and two half dollars, which were marked for identification. At about 8:00 p. m., Hall, accompanied by the officers, was driven to the vicinity of Jackson Boulevard and Green Street in Chicago, where he got out of the car and walked to a nearby poolroom lo-

185

cated on Halsted Street between Monroe and Adams Streets. Inside the poolroom, he approached the defendant whom he had known for two years and with whom he served a sentence in the penitentiary; he asked the defendant for "two bags." He testified that the defendant gave him two small tinfoil packages in return for which he gave the defendant the $10 of recorded and marked money. As Hall walked to the door he lit a cigarette as a prearranged signal to Officer Harvick, whom he saw looking into the poolroom through a window. He proceeded to Jackson and Green Streets and gave the tinfoil packages to Officers Lawrence and Healey. While on the witness stand, Hall examined the State's exhibit consisting of one $5 bill, four $1 bills and two fifty-cent pieces. After comparing the bills with the recorded serial numbers he stated the money was the same money that he had received from the police officers.

On cross-examination Hall testified that he had been a narcotic user for about eight years and that the last time he used narcotics was the day before he testified in this case. He said that when he met the defendant in the penitentiary he was serving a sentence for burglary and that a charge of auto theft was pending against him at the time of the trial in this case. He further related that on approximately twelve prior occasions he had cooperated with the police in making narcotics arrests, but that he had not been motivated to do so by promises of leniency or remuneration.

Officer Harrison Harvick testified that Hall left the police car at Green Street; that he walked in the general direction that Hall did and observed him go into the poolroom. He testified that, through the pool hall window, he observed Hall talking to the defendant, and that he observed an exchange of unidentified objects between Romero and Hall.

186

Officer John Deering testified that after Hall left the police car, he (Deering) walked to the vicinity of Monroe and Halsted Streets and saw Hall enter and leave the poolroom. He saw Romero leave the poolroom shortly after Hall, and, together with Officer Harvick, he followed Romero into a tavern two doors away from the poolroom where the defendant was arrested. Shortly before the arrest, Deering saw the defendant hand some money to a man at the bar in the tavern, which Deering recovered and identified as the same recorded bills and marked half dollars that were given to Hall. Deering testified that he then searched the defendant and found two additional tinfoil packets and a marijuana cigarette on his person.

Officer Leonard Lawrence testified that fifteen minutes after Hall left the police car, he returned and handed Lawrence two tinfoil packets of white powder which the officer field tested. It was stipulated that if Charles Vondrak, a chemist, was called as a witness he would testify that the tinfoil package contained heroin.

The only evidence offered for the defendant was his own testimony in which he said that he had known Hall for two or three years and served a term in the penitentiary at the same time Hall was there and that on one occasion in 1962 he loaned Hall $15. He said that on the day in question Hall entered the poolroom and after he, Romero, finished a game of pool with another person, Hall handed him a $5 bill, four $1 bills and fifty cents, saying, "here is some of the money I owed you." The defendant testified that Hall also handed him an envelope and a cigarette after telling him he wasn't using narcotics and that he was "hot in the district with the police." Romero testified that he followed Hall out of the poolroom and went into the tavern and asked the tavern owner

187

"for change out of five and the four ones and the fifty cents" at which time the officers came in and arrested him.

██ The defendant correctly points out that the testimony of Hall, a narcotics addict informer, may be received as evidence, but its credibility is thereby affected and it must be closely scrutinized. People v. Perkins, 26 Ill2d 230, 186 NE2d 330; People v. Villalobos, 20 Ill2d 315, 169 NE2d 745; People v. Hamby, 6 Ill2d 559, 129 NE2d 746. Although the testimony of a narcotic addict is scrutinized with caution, his testimony may be sufficient to sustain a conviction if it is credible under the surrounding circumstances. People v. Hines, 30 Ill2d 152, 195 NE2d 712. The test is not whether an addict informer's testimony is uncorroborated, but whether his testimony is credible under the surrounding circumstances. People v. Drumwright, 48 Ill App2d 392, 199 NE2d 282.

In support of his contention that the evidence was insufficient to support his conviction, the defendant argues that the evidence does not show constant surveillance of the informer during his walk from the police car to the poolroom and therefore Hall could have secured narcotics from his own source of supply and could have been carrying it on his person when he met the defendant. We think such an explanation is highly unlikely under the evidence here. The time during which Hall was outside the officer's surveillance must have been very brief because, for much of the fifteen minutes from the time Hall left the police car and the time he returned to it, he was under surveillance leaving the car and entering and leaving the poolroom. We know too that after he was searched before driving to the vicinity of the poolroom, he was carrying on his person only the marked money. Since the money was recovered later

in the tavern, Hall could not have purchased narcotics during the brief period he was not under surveillance.

■ Moreover, the fact that Hall was not kept under constant observation goes to his credibility. People v. Villalobos, 20 Ill2d 315, 169 NE2d 745. In People v. Larry, 30 Ill2d 533, 198 NE2d 334, the court said, on page 536: "The credibility of a drug addict, like that of other witnesses, is primarily a question for the trial courts, [citing cases], although drug addiction is a factor to be considered." Considering the evidence and the informer's addiction, we think the trial court's assessment of credibility should not be disturbed.

The defendant also contends that Hall's testimony lacks credibility because it is not corroborated by other testimony. We cannot agree. Hall's testimony that he met Romero in the poolroom is not only corroborated by the police officer but it is admitted by the defendant. Hall's testimony concerning the exchange of marked money for narcotics was corroborated by the police officer who testified as to an exchange of "something" between Hall and Romero. Because of the personal search of Hall, the objects of the exchange must have been the marked money, which was later recovered in the tavern into which the defendant was followed after his meeting with Hall, and the narcotics which Hall subsequently delivered to the officer waiting in the police car.

■ This court will not substitute its judgment on the matter of the credibility of witnesses and the weight to be given their testimony where the trier of fact saw and heard their testimony, unless we can say that the proof was so unsatisfactory as to justify a reasonable doubt as to the defendant's guilt. People v. Palmer, 26 Ill2d 464, 187 NE2d 236; People v. Drumwright, 48 Ill App2d 392, 199 NE2d 282. We

■

are of the opinion that the evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt and since the trial court chose to believe the testimony of the informer and the supporting evidence of the police rather than that of the defendant, we see no reason for disturbing the finding of guilty.

The judgment of the Criminal Court of Cook County is affirmed.

Affirmed.

MURPHY, P. J. and KLUCZYNSKI, J., concur.